**Anthony SICARI and Esther Sicari, Petitioners–Appellants,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent– Appellee.**

**Docket No. 97–4186.**

United States Court of Appeals, Second Circuit.

Argued Dec. 2, 1997.

Decided Feb. 27, 1998.

Sheldon Eisenberger, New York City, for appellants.

Michelle B. O'Connor, Washington, DC (Loretta C. Argrett, Asst. Atty. Gen., David English Carmack, Tax Div., Dept. of Justice, Washington, DC, on the brief), for appellee.

Before: WINTER, Chief Judge, NEWMAN and WALLACE,* Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal concerns the duty of the Commissioner of Internal Revenue (the "Commissioner") to use reasonable diligence, when sending a notice of deficiency to a taxpayer, in ascertaining the taxpayer's "last known address." A notice sent to such address is a prerequisite to collection of an income tax deficiency, and the mailing of a proper notice starts a 90–day time period in which the taxpayer may challenge the assessment of the deficiency in the Tax Court. Usually, disputes as to whether the required notice was properly addressed concern a taxpayer who has moved to a location different from the one known to the Commissioner. This appeal, however, involves the extraordinary circumstances of taxpayers whose address has changed twice within one year even though they have never moved at all.

Anthony Sicari and his wife appeal from the March 4, 1997, order of the Tax Court (Howard A. Dawson, Judge), holding that their petition for a redetermination of income tax deficiencies was untimely, and dismissing the action for lack of subject matter jurisdic-tion. The Sicaris contend that the notice of deficiency was insufficient because the Commissioner sent it to the wrong address notwithstanding his actual knowledge that the Sicaris' home had been assigned a new, more precise address designation. We conclude, on the precise facts of this case, that the Tax Court erred in finding that the Commissioner acted with the requisite reasonable diligence, and we remand for a determination as to whether the notice of deficiency, regardless of improper addressing, was in fact delivered to the Sicaris.

## Background

Since 1976, the Sicaris have lived in the same house in the small upstate community of Gardiner, New York, in Ulster County. Their home is located along Route 208, a two-lane state highway. Before 1991, the Sicaris' official mailing address was simply "Route 208, Gardiner, New York 12525" (the "Route 208 address"). In January 1991, the United States Post Office assigned the Sicaris' residence a rural route box number, and the Sicaris' mailing address became "Route 208, Box 1370, Gardiner, New York 12525" (the "Box 1370 address"). In January 1992, the Post Office again changed the Sicaris' address, this time assigning their home a street number to facilitate the implementation of a "911" emergency notification system. At this time, the Sicaris' official address became "871 Route 208, Gardiner, New York 12525" (the "871 address").

In the fall of 1992, the Internal Revenue Service ("IRS" or "the Service") determined deficiencies in the Sicaris' federal income taxes for the tax years 1983 through 1986. On October 9, 1992, the Service's Albany, New York District Office issued a statutorily required notice of deficiency concerning these tax underpayments. The notice was sent to the Sicaris by certified mail, return receipt requested, in an envelope bearing the Route 208 address.

On November 10, 1992, the envelope was returned, unopened, to the Examination Sup-

---

* The Honorable J. Clifford Wallace, of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

port and Processing Unit at the IRS District Office in Albany. The envelope bore a "Return to Sender" stampmark in red ink, and the "REASON CHECKED" for the return was "Unclaimed." In addition, the words "Return unclaimed" had been handwritten on the face of the envelope. The envelope also listed two dates on which the Sicaris' postal carrier purportedly had delivered notices to the Sicaris informing them that they needed to come to the Post Office to claim the envelope, and the date on which the envelope was returned to the Service. Curiously, the date of the "1st Notice" was listed as "9–24"— presumably a reference to September 24, 1992, which *preceded* the date of the enclosed notice of deficiency by more than two weeks. The date of the "2d Notice" was listed as "10–16"; the date of "Return" was listed as "10–19." The Service made no further effort to contact the Sicaris concerning the tax deficiencies.

At the time the notice of deficiency was prepared, the Service was aware that the Sicaris had begun to use the Box 1370 address in numerous filings and items of correspondence. For example, the Sicaris had used the Box 1370 address in requests for extensions (pertaining to returns for the 1990 and 1991 tax years) filed with the Service in April 1991 and April 1992. In addition, Anthony Sicari had used the Box 1370 address in connection with personal bankruptcy proceedings in the Bankruptcy Court for the Southern District of New York that were monitored by the Special Procedures Unit of the Collection Division at the Albany District IRS Office. Anthony Sicari listed the Box 1370 address on the petition he filed commencing those proceedings in June 1992; the Special Procedures Unit received prompt notice of this filing and recorded the Box 1370 address in the Service's Automated Insolvency System ("AIS") computer database.

In June 1992, the Special Procedures Unit sent Anthony Sicari two letters, both using the Box 1370 address; these letters explained his obligation to file federal tax returns during the pendency of the bankruptcy

proceedings. In September 1992, just over two weeks before the notice of deficiency was sent, the Special Procedures Unit filed in the Bankruptcy Court a Proof of Claim form, which also listed the Box 1370 Address.

Internal Revenue Agent James Manico, a member of the Quality Measurement Staff at the Albany District IRS Office, was responsible for ascertaining the Sicaris' address for the notice of deficiency. To determine the Sicaris' last known address, Manico reviewed the Sicaris' administrative file and instructed a clerk to run a computer search. The clerk searched two IRS databases but did not search the AIS database in which the Sicaris' Box 1370 address was stored. The search of the administrative file and the two IRS databases that were searched did not alert Manico to a change in (or refinement of) the Sicaris' address.[1] Nothing in the record explains why the clerk did not search the AIS database.

The Sicaris claim that they did not receive actual notice of the alleged deficiency until June 1995, when they met with an Internal Revenue agent to discuss an unrelated matter. The Sicaris commenced the present action two weeks later, on June 27, 1995, by filing a petition for redetermination of the deficiencies in the Tax Court. The Service moved to dismiss for lack of subject matter jurisdiction, arguing that the petition was untimely.

After a hearing, Special Trial Judge Norman Wolfe concluded that the notice was sufficient and ruled that the petition was untimely. Judge Dawson adopted Judge Wolfe's opinion and dismissed the action. See Sicari v. Commissioner of Internal Revenue, 73 T.C.M. (CCH) 2136, 1997 WL 87252 (1997).

## Discussion

"In order to collect a deficiency in income tax, the Commissioner must have mailed a notice of deficiency by certified or registered mail to the taxpayer at his last known address." *Follum v. Commissioner of Internal*

---

1. The information in the two databases that were searched had been drawn from the Sicaris' most recent fully processed tax returns, for the 1988

and 1989 tax years, both of which listed the Route 208 Address.

*Revenue,* 128 F.3d 118, 119 (2d Cir.1997); *see* 26 U.S.C. §§ 6212(a), (b)(1) (1994). Generally, to challenge the assessment of a tax deficiency, a taxpayer must file a petition for redetermination in the Tax Court within 90 days of the mailing of the notice of deficiency. *See id.* § 6213(a). However, when the notice of deficiency was mailed to the Sicaris in October 1992, Anthony Sicari's bankruptcy proceeding was still pending, and the automatic stay imposed by the Bankruptcy Code prevented the Sicaris from commencing any action in the Tax Court. *See* 11 U.S.C. § 362(a)(8) (1994).

To account for this bar, the Internal Revenue Code provides that where a notice of deficiency is issued to a debtor who is the subject of pending bankruptcy proceedings, the 90–day period does not begin to run until 60 days following the conclusion of bankruptcy proceedings. *See* 26 U.S.C. § 6213(f)(1). Because the Bankruptcy Court did not dismiss Anthony Sicari's bankruptcy proceeding until September 14, 1994, the Sicaris had until February 13, 1995, to file a petition for redetermination of the deficiencies described in the October 9, 1992, notice. The Sicaris missed this deadline.

■ Ordinarily, a late petition to the Tax Court will be dismissed for lack of subject matter jurisdiction, and the taxpayer's only remedy will be to pay the deficiency and bring a refund suit in the District Court. *See Hoffenberg v. Commissioner of Internal Revenue,* 905 F.2d 665, 666 (2d Cir.1990). The Sicaris seek to avoid this result by contending that the notice of deficiency was insufficient because it was mailed to the outdated Route 208 Address. When a notice of deficiency is defective, the 90–day clock does not begin to run, and the Tax Court lacks jurisdiction over a petition for redetermination directed to the deficiencies described in the defective notice. *See Ward v. Commissioner of Internal Revenue,* 907 F.2d 517, 521 (5th Cir.1990).[2]

■ The "last known address" to which the notice of deficiency must be sent is "the taxpayer's 'last permanent address or legal residence known by the Commissioner or the last known temporary address of a definite duration to which the taxpayer has directed the commissioner to send all communications.'" *Tadros v. Commissioner of Internal Revenue,* 763 F.2d 89, 91 (2d Cir.1985) (citation omitted). As we explained in *Tadros:*

> Although the mailing of notice to the taxpayer's last known address may not always provide actual notice to the taxpayer, this allowance for constructive notice protects the IRS from the overwhelming administrative burden of ascertaining each taxpayer's exact address at any given time. To further this purpose, it becomes the responsibility of the taxpayer to communicate to the commissioner a "clear and concise notification" of any change in address. This is not to say, however, that the IRS has no obligation to attempt to ascertain the taxpayer's new address; *where it is shown that the IRS has failed to exercise reasonable care in determining an address, a notice sent to the wrong address will not satisfy the statutory requirement, and the 90–day period will not begin to run.*

*Id.* at 91–92 (emphasis added) (citations omitted). In determining whether the IRS used reasonable diligence in ascertaining a taxpayer's last known address, we consider the information the Service had at the time it mailed the notice of deficiency. *See Follum,* 128 F.3d at 119. We review *de novo* the Tax Court's legal conclusion as to the satisfaction of the reasonable diligence requirement. *See id.*

The Commissioner relies on the fact that the notice was mailed to the Route 208 address because this was the address the Sicaris had listed on what was then their most recently filed return, a return for the 1986 tax year that had been filed on May 15, 1991. Several courts have held that the address listed on the taxpayer's most recently filed return is presumptively the "last known address" for purposes of a notice of deficiency. *See, e.g., Armstrong v. Commissioner of Internal Revenue,* 15 F.3d 970, 973–74 (10th Cir.1994); *Marks v. Commissioner of Inter-*

---

**2.** Thus, both sides are contending that the Tax Court lacked subject matter jurisdiction, but their contentions lead to entirely different ultimate consequences.

*nal Revenue,* 947 F.2d 983, 985 (D.C.Cir. 1991); *Williams v. Commissioner of Internal Revenue,* 935 F.2d 1066, 1067 (9th Cir. 1991); *Ponchik v. Commissioner of Internal Revenue,* 854 F.2d 1127, 1129 (8th Cir.1988); *McPartlin v. Commissioner of Internal Revenue,* 653 F.2d 1185, 1189 (7th Cir.1981).

■ Nevertheless, we think that, under the circumstances presented here, it was unreasonable for the Commissioner to rely on the address listed on the taxpayers' most recently filed return. As we explained in *Follum,* "The Commissioner has an obligation to exercise reasonable diligence to ascertain the taxpayer's correct address *if prior to mailing the deficiency she has become aware that the address last known to the agency may be incorrect." Follum,* 128 F.3d at 119–20 (emphasis added). Here, the Service had actual knowledge, at the time it issued the notice, that the Sicaris had begun to use the Box 1370 address, a more precise refinement of their prior Route 208 address. The Service itself had used the Box 1370 address in correspondence to the Sicaris prior to October 1992, and had recorded the Box 1370 address in one of its computer databases. Normally, reasonable diligence will require the Service to consult its own files, at least those maintained in computer databases in the same district initiating the disputed notice. *See, e.g., United States v. Bell,* 183 B.R. 650, 653 (S.D.Fla.1995) ("While the taxpayer should bear the burden of notification of the new address, the IRS cannot simply ignore that which it obviously knows."); Russell J. Kutell, Note, *The Current Trend in Interpreting the Internal Revenue Service's Standard of Reasonable Diligence in Mailing Notices of Deficiency to a Taxpayer's "Last Known Address" and the Due Process Implications,* 44 Tax Law. 625, 630 (1991) ("If the Service has a computer feature that requires minimal time and effort to implement, then the Service should be required to exercise this feature.").

Had a diligent search been conducted, the Box 1370 address would have been discovered, and the Service would have been alerted to the possibility that the Route 208 address "may be incorrect." *Follum,* 128 F.3d at 120. It would then have been apparent to the Service that the Sicaris were still living in the same place and that the Box 1370 address was merely a refinement of the Route 208 address. The Commissioner's contention that the Internal Revenue agents responsible for the preparation of the notice of deficiency were unaware of the information in the files of the Special Procedures Unit is unavailing. As the District of Columbia Circuit has pointed out, "An innocent taxpayer should not be penalized because the tax collector neglects to tell his right hand what his left hand is doing." *Crum v. Commissioner of Internal Revenue,* 635 F.2d 895, 900 (D.C.Cir.1980); *see also Cool Fuel, Inc. v. Connett,* 685 F.2d 309, 312–13 (9th Cir. 1982) ("The application of ordinary business principles to the tax business of the government would seem to require the Commissioner to avail himself of the facilities of his business organization in the performance of his duty to mail the notice of deficiency.") (citation and internal quotation marks omitted).

The unusual facts of this case distinguish it from the result we reached in *Tadros.* In *Tadros,* we upheld the sufficiency of a notice of deficiency mailed to the former New York address of a taxpayer who had moved to New Jersey. The taxpayer had used his New York address in his most recently filed return. Prior to issuing the notice, the Service had received a letter from the taxpayer, written on letterhead displaying the New Jersey address, requesting copies of certain previous correspondence. In declining to permit the taxpayer to rely on the address on the letterhead, we noted that the letter did not indicate whether that address was his new address. *See Tadros,* 763 F.2d at 92.

Several facts distinguish *Tadros.* First, the Service there had not actually recorded the new address in its files, and had never used the new address in any communications to the taxpayer, whereas here a unit of the Service had filed a Proof of Claim form in the Bankruptcy Court, using a more current address. Second, the taxpayer in *Tadros* had used the address only in a single informal "routine inquiry." Third, and most important, the IRS was faced with two addresses corresponding to different locations. Under

those circumstances, the Service could not be faulted for using the old address under circumstances where it had no particular reason to know at which of the two different locations the taxpayer was living. *See Armstrong,* 15 F.3d at 974 ("[R]easonable diligence does not require that the IRS send duplicate notices to every address of which it has knowledge.").

■ Because we conclude that the Commissioner did not act with reasonable diligence in preparing the notice of deficiency, we vacate the order of the Tax Court dismissing the Sicaris' petition. However, the lack of diligence does not necessarily mean that the notice was ineffective. Even if the notice was inadequately addressed, the requirement of effective notice would be satisfied if the Service could prove, by a preponderance of the evidence, that the envelope containing the notice was in fact delivered to the Sicaris' residence. *See Pugsley v. Commissioner of Internal Revenue,* 749 F.2d 691, 692–93 (11th Cir.1985) ("We do not determine whether the notice was sent to Pugsley's 'last known address,' since even if it was not, Pugsley was not prejudiced because he 'received actual notice of the deficiency with ample time remaining to file a petition.' ") (footnote and citation omitted); *accord Bonty v. Commissioner of Internal Revenue,* 74 T.C.M. (CCH) 322, 323, 1997 WL 461910 (1997) ("[A] taxpayer's actual receipt of a notice of deficiency, without prejudicial delay, obviates the need to decide whether the notice was mailed to the last known address.").

In the face of conflicting evidence, the Tax Court specifically declined to make a finding as to whether the envelope was delivered.[3]

That matter remains to be determined on remand.

## Conclusion

The order of the Tax Court is vacated, and the cause is remanded to the Tax Court for further proceedings consistent with this opinion.

WALLACE, Circuit Judge, dissenting:

I must respectfully dissent, as I conclude that the majority opinion is inconsistent with the Second Circuit's decisions in *Follum v. Commissioner,* 128 F.3d 118 (2nd Cir.1997)(*Follum*), and *Tadros v. Commissioner,* 763 F.2d 89 (2nd Cir.1985)(*Tadros*). In addition, the majority overlooks the dispositive fact that the Sicaris used the Route 208 and Box 1370 addresses interchangeably in their court and Internal Revenue Service (IRS) filings during 1991 and 1992.

Before I get to these critical aspects of the appeal, I point out that the majority opinion also fails to address the question of the standard of review. It assumes without comment that the proper standard is de novo. Neither *Follum,* which the majority cites, nor *Tadros,* however, address the proper standard of review in cases involving "last known address" inquiries. *Follum* only states a generic standard: "The factual findings of the tax court must be upheld on appeal unless they are clearly erroneous. The tax court's rulings of law are reviewed *de novo,*" 128 F.3d at 119, without specifically addressing the appropriate standard in this case.

All other circuits to consider the question, however, have determined that a review for clear error is appropriate. *Armstrong v. Commissioner,* 15 F.3d 970, 973–74 (10th

---

**3.** The evidence on this issue was somewhat conflicting. On the one hand, there was evidence that even after January 1992 (when street numbers were assigned to residences located along Route 208), the Gardiner Post Office continued to deliver to the proper intended recipients mail bearing either of the two outmoded forms of address. It is possible that the Sicaris actually received a slip notifying them of a certified mail delivery from the Service, yet chose not to claim the envelope. We note that if the Post Office treated mail addressed to the Route 208 Address as properly addressed even in October 1992, then the Service may be entitled to the benefit of the

presumption of delivery that applies where properly addressed mail is placed in the custody of the Postal Service. *See Hoffenberg,* 905 F.2d at 666.

On the other hand, the stamp on the envelope indicating that delivery was attempted on September 24, 1992—over two weeks before the notice was issued—suggests that there may have been some irregularity in the Post Office's handling of the envelope. It may be that the envelope was never delivered to the Sicaris as a result of a Post Office mistake.

We intimate no view as to the appropriate resolution of this factual issue.

Cir.1994)(*Armstrong*); *King v. Commissioner*, 857 F.2d 676, 678–79 (9th Cir.1988); *McPartlin v. Commissioner*, 653 F.2d 1185, 1189 (7th Cir.1981); *Johnson v. Commissioner*, 611 F.2d 1015, 1019 (5th Cir.1980). The majority does not explain why it chooses to diverge from the established norm and create an intercircuit conflict in providing less deference to the tax court's findings of fact. I would review for clear error.

*Follum* and *Tadros* establish the basic rule that "[t]he address shown on the taxpayer's most recently filed return is his last known address unless the taxpayer has sent a notice of change of address." *Follum*, 128 F.3d at 119; *see Tadros*, 763 F.2d at 91. None was sent here. The only exception to this rule is if "prior to mailing the deficiency notice [the Commissioner] has become aware that the address last known to the agency may be incorrect," in which case "[t]he Commissioner has an obligation to exercise reasonable diligence to ascertain the taxpayer's correct address." *Follum*, 128 F.3d at 119–20.

My first concern with the majority opinion is that it assumes some awareness, or "actual knowledge," on the part of the Commissioner without a thorough discussion or clarity of standards. Unlike *Follum*, which required awareness that the last known address may be incorrect, the majority is satisfied with the Commissioner's "actual knowledge" that "the Sicaris had begun to use the Box 1370 address." These standards are not the same, as this case demonstrates.

Although the majority is correct that the Sicaris did use the Box 1370 address in bankruptcy court filings and items of correspondence with the IRS in 1991 and 1992, the majority fails to mention that the Sicaris did not use this address exclusively. In 1991 and 1992, the Sicaris also filed an amended federal tax return for 1986 and a Form 872 with the IRS, and two schedules in the bankruptcy court, all using the Route 208 address. Thus, although the IRS may have received items bearing the Box 1370 address, it is unreasonable to assume that the Sicaris' interchangeable use of *both* address gave the IRS notice that "the address last known to the agency may be incorrect," the standard required by *Follum*.

The majority supports its novel standard by advising us that the Special Procedures Unit has chosen to include the Box 1370 address in its database. The existence of the Box 1370 address in its database, however, does not save the Sicaris. The IRS searched two national databases before sending the deficiency notice; the Sicaris have made no showing that the additional search of the automated insolvency system database was "a computer feature that requires minimal time and effort to implement," as the majority seems to assume.

I do not disagree with the majority's quoted statement: "While the taxpayer should bear the burden of notification of the new address, the IRS cannot simply ignore that which it obviously knows." *United States v. Bell*, 183 B.R. 650, 653 (S.D.Fla.1995). In this case, however, it is a stretch to say that the IRS obviously knew that the Route 208 address could be incorrect. One division of the IRS may have been "aware" that the Sicaris used both the Route 208 address and the Box 1370 address, but the Sicaris' continued use of *both* addresses suggests, if anything, that both addresses were equally effective, not that the Route 208 address "may be incorrect."

The majority attempts to paint the picture of a taxpayer caught amid pointless bureaucracy, "penalized because the tax collector neglects to tell his right hand what his left is doing." *Crum v. Commissioner*, 635 F.2d 895, 900 (D.C.Cir.1980)(*Crum*). Despite this evocative language, the cases the majority cites in support of this point only impute knowledge to the IRS of recent addresses on tax returns. *See Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 312 (9th Cir.1982); *Crum*, 635 F.2d at 899. Indeed, the Ninth Circuit has directly held that "knowledge acquired [by the IRS] in unrelated investigations is not necessarily imputed from one division to another." *King v. Commissioner*, 857 F.2d 676, 680 (9th Cir.1988). *King* explains:

If we required agents mailing notices of deficiency to take into account address information acquired by agents in different divisions in the course of unrelated investigations, the IRS could ensure that notices were validly addressed only [by] systemat-

ically recording in a central file all address information acquired in any fashion. We decline to require the IRS to do that. *Id., quoting United States v. Zolla*, 724 F.2d 808, 810–11 (9th Cir.1984).

The majority further states that "[h]ad a diligent search been conducted, the Box 1370 address would have been discovered, and the IRS would have been alerted to the possibility that the Route 208 address, 'may be incorrect.'" Maj. op. at 929, *citing Follum*, 128 F.3d at 120. Here, the majority has the case law precisely backwards: the Commissioner "has an obligation to exercise reasonable diligence to ascertain the taxpayer's correct address if…she has become aware that the address last known to the agency may be incorrect." *Follum*, 128 F.3d at 119–20. Either the IRS was aware that the Route 208 address might be incorrect, in which case it had a duty to exercise reasonable diligence, or it was not aware. In any case, it is not required to search all its records and files diligently in order to become aware that the last known address might be incorrect.

Even if the IRS were aware that the Route 208 address may have been incorrect, the majority further errs in concluding that the IRS failed to exercise reasonable care in determining the correct address. As the majority itself acknowledges, "[R]easonable diligence does not require that the IRS send duplicate notices to every address of which it has knowledge." *Armstrong*, 15 F.3d at 974. Its knowledge was from prior returns: the Route 208 address. If we impute all IRS information to the deficiency sender, the sender would be aware of the taxpayers' interchanging use of the Route 208 and the Box 1370 addresses. The majority does not come to grips with the obvious result: the notice was reasonably sent to the tax return address, an address still used by the taxpayer during all the time in question.

The opinion also unpersuasively attempts to distinguish *Tadros. Tadros* held that a taxpayer letter, which used a new address on its letterhead and stated that previous IRS correspondence was "lost or misplaced in the process of moving," was insufficient to put the IRS on notice of a change of address. *Tadros*, 763 F.2d at 92. The majority would primarily distinguish *Tadros* because there "the IRS was faced with two addresses corresponding to different locations." The majority opinion does not explain why the IRS here should have realized that the Box 1370 address and Route 208 address were in fact addresses to the same location—on their face, they were simply different addresses. Even if the IRS were aware that the Box 1370 address was a refinement of the Route 208 address, it is not clear why this should give the IRS more responsibility to do additional searches. *Tadros* is directly applicable: the Sicaris did not indicate that they "had permanently moved, nor whether [the second address] was [their] new place of residence. Nor did [they] mention the old address or indicate that it was no longer to be used." *Tadros*, 763 F.2d at 92.

The majority also attempts to distinguish *Tadros* because of the "circumstances [in *Tadros*] where [the IRS] had no particular reason to know at which of the two different locations the taxpayer was living." Such circumstances, however, are even more compelling in the present case. During 1991 and 1992, the Sicaris used the Box 1370 and Route 208 addresses interchangeably, providing even less clear notice to the IRS than the taxpayer in *Tadros*. Even with reasonable diligence, there is no reason the IRS should have been prescient enough to recognize the Box 1370 as the "correct" address.

As this court stated in *Tadros*:

Although the mailing of notice to the taxpayer's last known address may not always provide actual notice to the taxpayer, this allowance for constructive notice protects the IRS from the overwhelming administrative burden of ascertaining each taxpayer's exact address at any given time. To further this purpose, it becomes the responsibility of the taxpayer to communicate to the commissioner a "clear and concise notification" of any change in address.

*Tadros*, 763 F.2d at 91 (citations omitted). The Sicaris failed to provide a "clear and concise notification" of a change of address; the IRS exercised diligence in sending the notice to the Route 208 address.

For the foregoing reasons, I would affirm the decision of the tax court.